**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justin Dwayne Hill,<br><br>   Plaintiff,<br><br>v.<br><br>Maricopa County Sheriff's Office, et al.,<br><br>   Defendants. | No.  CV 18-02613-PHX-GMS (MTM)<br><br>**ORDER** |

Pending before the Court are five Appeals of Magistrate Judge Decision to District Court by Plaintiff Justin Dwayne Hill. (Doc. 220, 259, 260, 261, and 262.)

Pursuant to Federal Rule of Civil Procedure 72(a), parties may file objections to a magistrate judge order within fourteen days after being served with a copy of the order. The Court must then consider these objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). As all of Plaintiff's objections were timely, the Court considers each.

**I.     Doc. 220**

Plaintiff first objects to an order, Doc. 211, denying his request for the appointment of an investigator, Doc 202, and his various attempts to oblige Defendants to make video and audio recordings relevant to his case accessible for his review, Docs. 203, 204, and 205. In three separate requests, Plaintiff attempted to compel access to various audio and video footage that he is otherwise unable to view. In Doc. 203, Plaintiff requested that the Court order a hearing at which such recordings could be played for him. In Doc. 204, he

requested that the Court order that Defendants' Attorney personally be ordered to set up a call with him to play the audio recorded interviews of Defendants Martin and Yu over the telephone. In Doc. 205, Plaintiff requested that the Court order Defendants to "provide the means for me to view and listen to audio/video evidence concerning this matter."

As an initial matter, this Court upholds the denial of the appointment of an investigator. Plaintiff has not come close to meeting the standard required for such an appointment. As it pertains to the recordings, in their terse Response, Defendants noted that Plaintiff was being denied direct access to the evidence because he is incarcerated and providing the recordings would breach safety protocol and could endanger other inmates or detention officers. Defendants further noted that the recordings were available and would be produced to Plaintiff's designee rather than to Plaintiff. Defendants did not set forth any particular safety protocol that would be violated by providing the Plaintiff access to the recordings, nor did they explain how giving direct access to the Defendant to the recordings "could endanger other inmates or detention officers."

"[U]pon request, an inmate is entitled to access prison video surveillance evidence pertaining to his or her disciplinary proceeding unless the government establishes that disclosure of such evidence would be, under the particular circumstances of the case, 'unduly hazardous to institutional safety or correction goals.'" *Lennear v. Wilson,* 937 F.3d 257, 271-72 (4th Cir. 2019) (quoting Wolff v. McDonnell, 418 U.S. 539, 566 (1974)). Prison officials bear the burden of providing evidence justifying their denial of a prisoner's request for access to documentary evidence, including video surveillance footage. *Id.* at 270. "[I]f prison officials fail to identify a specific safety or correctional concern, courts may not 'speculate' as to the officials' potential reasons for denying an inmate access to evidence. . . ." *Id.*

Defendants suggest in their motion papers that Plaintiff will not be able to view the video evidence or hear the audio except through a summary prepared by a designee. But Defendants offer no explanation as to why it would breach policy or be unadvisable to allow Plaintiff to create conditions in which it would be possible for him to view and hear

the recordings he seeks without endangering other inmates or detention officers. Without more specifics, Defendants have not provided a sufficient justification on which to deny Plaintiff access to the recordings.

Certainly, the Magistrate Judge was correct in noting that Defendants' attorney need not play the recordings for the Plaintiff; nor does the Court have to schedule a hearing to accomplish such a result. But the generic reasons offered by Defendants for refusing to provide Plaintiff with access to the recordings are insufficient. To accomplish such a denial of access to Plaintiff would hamper Plaintiff's ability to prepare for his case by effectively limiting his right to discovery. Although "[p]rison security" is, "in appropriate circumstances, a factor which justifies a limitation on otherwise appropriate discovery as unduly burdensome," it is not "a magic incantation that allows prison officials to refuse to participate in the litigation process." *Pettit v. Ryan*, No. CV112139PHXDGCJFM, 2012 WL 13167975, at *2 (D. Ariz. Dec. 20, 2012). While reasonable security steps can be taken in allowing Plaintiff to view the requested video and audio tapes, the Magistrate Judge's order is set aside and Plaintiff's request for Defendants to make video and audio recordings accessible for his review is granted, absent further justification why they should be withheld.

**II.    Doc. 259**

Plaintiff objects to Doc. 248 denying his motion for in camera review and to compel Defendants to produce withheld documents, Doc. 213. On August 16, 2019, Plaintiff served Defendants "with a request for production 1-9," number two of the request being "the prosecution file pertaining to the charges against [Plaintiff] retained by the MCAO." (Doc. 259 at 1.) On January 5, 2020, Plaintiff received the requested file and learned that Defendants had withheld several documents. Plaintiff accordingly filed Doc. 213 the following day, describing not only the withheld documents but also Defendants' response during a video conference on December 27, 2019 that some of Plaintiff's requested materials were privileged. On February 21, 2020, the Magistrate Judge denied Plaintiff's motion as untimely because, pursuant to the Court's scheduling order (Doc. 39), all

Motions pertaining to discovery were required to be filed by October 31, 2019, and "Plaintiff state[d] that on August 16, 2019 – two months ahead of the discovery deadline – he received 'about 35 pages' from Defendants in response to his request." (Doc. 248 at 4.) However, Plaintiff did not state that he *received* documents on August 16, 2019, but rather than he requested documents on that date. He stated that he received the documents on January 4, 2020. Given that the Magistrate Judge apparently misread this fact and that Defendants failed to produce the requested file until January 2020 (for which they have provided no explanation, in response to either Doc. 211 or Doc. 259, despite the Court's request that they respond to Doc. 259), this first basis for denying Plaintiff's motion is clearly erroneous.

The Magistrate Judge also denied the motion on the basis that it failed to comply with LRCiv 37.1 because the Magistrate could not determine "based on Plaintiff's conclusory statements that Defendants' statements concerning the content of the documents and the applicability of any privileges [we]re deficient." (Doc. 248 at 4.) LRCiv 37.1 requires that the moving party state only "(1) the question propounded, the interrogatory submitted, the designation requested or the inspection requested; (2) the answer, designation or response received; and (3) the reason(s) why said answer, designation or response is deficient." It provides no guidance on how specific the "reasons why said answer . . . is deficient" must be. Plaintiff asserted that none of the documents he requested "appeared to be prepared in anticipation of litigation or for trial in this matter, and work-product protection does not cover material prepared in anticipation of trial in unrelated matters." (Doc. 213 at 6.) In the current motion, Plaintiff further explains that Defendants' response to his request did not describe the documents not produced "in a manner that . . . enabled [him] to assess the claim of privilege." (Doc. 259 at 4.) Given that Plaintiff did provide a reason, however brief, as to why Defendants' responses to his document requests were deficient, and that Defendants have provided no response to this motion, the Magistrate Judge's order is set aside and Plaintiff's request for in camera

review and to compel Defendants to produce withheld documents for that review is granted.

**III.   Doc. 260**

Plaintiff objects to Doc. 248 denying his motion for reconsideration, Doc. 201, of a prior order, Doc. 195, denying his request for a court-appointed expert pursuant to Federal Rule of Evidence 706, "in order to examine . . . [his] opened envelope and determine[] what the substance is on the pages inside and the envelope itself," in support of his claim that "defendants intentionally opened [his] legal mail outside of [his] presence[]." (Doc. 260 at 2–3.) A Rule 706 expert "typically acts as an advisor to the court on complex scientific, medical, or technical matters." *Armstrong v. Brown*, 768 F.3d 975, 987 (9th Cir. 2014); *see also, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 592 (9th Cir. 2014) (seeing "no reasonable objection" to the district court appointing an expert to interpret "the most complex biological opinion ever prepared" by the U.S. Fish and Wildlife Service); *Foster v. Enenmoh*, 649 F. App'x 609 (9th Cir. 2016) ("the evidence . . . was not so complex that appointment of a neutral expert witness was required" in a suit by a prisoner against a prison doctor for refusing to prescribe "the only medicine that treated [the plaintiff's] chronic constipation effectively"); *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (appointing a neutral expert witness under Rule 706 was "appropriate" where the court faced "confusing" and "contradictory evidence about an elusive and unknown disease"). Thus, courts "do not commonly appoint an expert pursuant to Rule 706 and usually do so only in 'exceptional cases in which the ordinary adversary process does not suffice' or when a case presents compelling circumstances warranting appointment of an expert." *Womack v. GEO Grp., Inc.*, No. CV-12-1524-PHX-SRB, 2013 WL 2422691, at *3 (D. Ariz. June 3, 2013).

Plaintiff asserts that "[d]etermining the substance on the evidence is a complex scientific issue[] because there very well could be substances other than glue which may have had the same effect on the evidence." (Doc. 260 at 5.) The Magistrate Judge's decision is not "clearly erroneous or [] contrary to law." Fed. R. Civ. P. 72(a). This issue is not

1  sufficiently complex or technical to warrant a court-appointed expert to determine whether
2  Defendants unlawfully opened Plaintiff's legal mail. Moreover, "[u]ntil the Court has had
3  the opportunity to review the arguments and evidence submitted by the parties on summary
4  judgment, no determination can be made that the issues are so complex as to require the
5  testimony of an expert to assist the trier of fact." *Womack*, No. CV-12-1524-PHX-SRB,
6  2013 WL at *3. The Magistrate Judge's order is affirmed.

**IV.   Doc. 261**

Plaintiff objects to Doc. 248 denying his request for a blank subpoena "so that I may subpoena transcripts for a hearing in my state court proceeding." (Doc. 217.)[1] In his original motion, Plaintiff did not explain that the "state court proceeding" from which he wanted a transcript was a hearing "concerning my motion to modify my release conditions" from Maricopa County Superior Court case CR2015-005443 and not "the trial proceeding in the justice court," JC2016-150752. (Doc. 236 at 1.) Thus, the Magistrate Judge denied Plaintiff's request as moot because Defendants, assuming Plaintiff sought a transcript of his trial, "already notified Plaintiff that there is no transcript of his state court proceeding." (Doc. 248 at 4.)

Plaintiff argues this transcript is relevant to "count 9 in this action" and also to "damages in all the other counts in this matter" because "[d]uring the hearing . . . the County Attorney argued because I was charged with the 5 counts of public sexual indecency . . . my motion to modify my release conditions should be denied." (Doc. 236 at 1.) However, this Court dismissed Count Nine without prejudice on September 9, 2019, (Doc. 113 at 2, 3) (dismissing all claims against "Doe 2" without prejudice and summarizing prior order dismissing Count Nine without prejudice as to all other defendants), and the claim was never amended. As to Plaintiff's argument that the transcript is relevant to damages, Plaintiff has not provided a date, judge, or courtroom

---

[1] Plaintiff's original motion requested an additional subpoena "so that I may obtain the names of the Maricopa County Correctional Health employees which treated me for issues pertaining to damage/injury concerning the claims in this matter." (Doc. 217.) However, as Defendants have "provided the names of the healthcare workers as requested," "that part of the request has been satisfied." (Doc. 269 at 2.)

- 6 -

from which the hearing could be identified. In addition, Defendants note that it is unlikely that there would be a transcript of the hearing, as most hearings in Superior Court are audio and video recorded. Plaintiff has not explained why the County Attorney's argument opposing Plaintiff's motion to modify his release conditions is relevant to damages, particularly given that it will be difficult for Plaintiff to establish that his bond would have been reduced even if that argument had not been made. The Court will therefore affirm the Magistrate Judge's order in the interest of judicial and financial economy.

## V.  Doc. 262

Finally, Plaintiff objects to the Magistrate Judge's denial at Doc. 248 of Plaintiff's request for an order compelling Defendants to unredact some or all the Disciplinary Action Reports (DARs) produced during discovery. Plaintiff seeks to compare inmates who received DARs for violating certain jail rules and regulations with the number of inmates that were criminally charged for those same violations, and asserts that he cannot do so without unredacted documents "due to the fact Defendants have not provided me with the number of inmates [criminally] charged." (Doc. 262 at 4.)

Defendants state that they are "unable to identify any other cases submitted for prosecution relating to sexual conduct or indecent exposure," concluding that "charges submitted for similar offenses . . . simply do not exist." (Doc. 270 at 3.) As this is the information Plaintiff sought as an alternative to unredacted DARs, Plaintiff's objection is moot. The Magistrate Judge's denial is affirmed.

**IT IS HEREBY ORDERED** that Magistrate Judge Michelle H. Burns' order (Doc. 211) is **SET ASIDE** and Plaintiff's request for Defendants to make video and audio recordings accessible for his review is **GRANTED**, absent further specific reasons justifying the denial of access.

**IT IS FURTHER ORDERED** that Magistrate Judge Michael T. Morrisey's order (Doc. 248) is **SET ASIDE** in part and **AFFIRMED** in part as follows:

1. The order is affirmed as to Docs. 260, 261, and 262.

2. The order is set aside as to Doc. 259 requesting in camera review and to compel Defendants to produce withheld documents, and those requests are granted.

Dated this 22nd day of May, 2020.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge